**HARLOW LAW, P.C.**
ATTORNEYS AND COUNSELORS AT LAW
A Limited Liability Partnership
85 BROAD ST., 17th FL -- WeWork
NEW YORK, NY 10004
718-569-7423
Fax No: 845-510-2219
E-mail: jordan@harlow-law.com

*Jordan F. Harlow*
   Partner

March 1, 2024

*Via ECF and Email (CronanNYSDChambers@nysd.uscourts.gov)*
Honorable John P. Cronan
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    Concepcion v. 3rd Avenue Heights, et al.
               1:22-cv-07959-JPC

Dear Judge Cronan:

     This firm represents Plaintiff Jose Concepcion, who is asserting claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") in the above-referenced matter. We are submitting this letter jointly on behalf of both Plaintiff and Defendants requesting that the Court approve a settlement as fair and reasonable under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), and dismiss the action with prejudice. A proposed Settlement Agreement is submitted herewith as Exhibit A and a Stipulation of Discontinuance that the parties are asking you to so order is submitted herewith as Exhibit B.

    I.    BACKGROUND

     Plaintiff alleges he was employed by Defendants from on or about January 15, 2010 to on or about May 6, 2023, as a building superintendent. Plaintiff alleges that throughout his employment, he worked in excess of forty (40) hours per week, sometimes upwards of 10 to 12 hours per day. Plaintiff alleges he was paid for the extra time he worked beyond forty (40) hours in a week, for which he claims he should have been paid overtime. Plaintiff also alleges he was not paid minimum wage for all hours worked, as he was paid $470 biweekly. Additionally, Plaintiff alleges that he was terminated following this Federal Complaint.

On September 16, 2022, Plaintiff commenced this action alleging that the Defendants violated state and federal wage and hour laws, including the Fair Labor Standards Act (FLSA) and the New York Labor Laws (NYLL), by failing to compensate him for all of the hours that he, as a non-overtime exempt employee, worked during his employment. Plaintiff filed an Amended Complaint on April 19, 2023, and a Second Amended Complaint June 16, 2023.

Defendants deny Plaintiff's claims in their entirety. Defendants claim that Plaintiff was a handyman, and not a building superintendent. Defendants also assert that Plaintiff did not work the hours claimed, and that his job responsibilities only required a few hours per day.

On December 1, 2022, Defendants filed an Answer to the Complaint denying the allegations therein. On July 13, 2023, Defendants filed an Amended Answer to the Second Amended Complaint denying the allegations therein. To date, the parties have engaged in pretrial discovery and mediation, which was unsuccessful.

On February 2, 2024, the parties, with their attorneys and a Spanish-language translator, met for a settlement meeting and, if necessary, deposition of the Plaintiff. At the conclusion of the meeting, the parties ultimately agreed to a settle this matter for $60,000, inclusive of attorney's fees. From these proceeds, Plaintiff will receive $40,000, and his attorneys will receive $20,000 in fees and costs.

II. THE SETTLEMENT IS FAIR AND REASONABLE

Pursuant to *Cheeks v. Freeport Pancake House, Inc.*, "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court." See 796 F.3d 199, 206 (2d Cir. Aug. 7, 2015). An FLSA settlement should be approved when it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.* 900 F.Supp.2d 332, 335 (S.D.N.Y. 2012). "Generally, there is a strong presumption in favor of finding a settlement fair, as the court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Matheis v. NYPS, LLC*, No. 13 Civ. 6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016). Moreover, "[c]ourts approve FLSA settlements when they are reached as the result of a contested litigation to resolve *bona fide* disputes." *In Re Penthouse Executive Club Compensation Litigation*, 2014 U.S. Dist. LEXIS 5864, 22 (S.D.N.Y. 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).

"Because Cheeks itself did not define the contours of the approval analysis or protocols it envisioned, most district courts within our Circuit turn to the multi-factor test set out in *Wolinsky* to evaluate whether an FLSA wage and hour settlement is fair and reasonable." *Cabrera v. CBS Corp.*, No. 17 Civ. 6011, 2019 WL 502131, at *4 (S.D.N.Y. Feb. 8, 2019). The court in *Wolinsky* set forth the following criteria for determining whether a proposed settlement is fair and reasonable: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at 335. Based on the above criteria, the proposed settlement, which provides for the payment of $60,000.00 to the Plaintiff

was achieved after hard fought and arm's-length negotiations between experienced counsel. Therefore, the settlement is fair and should be approved.

The first factor weighs in favor of approval. Based on Plaintiff's initial estimated damages calculations, Plaintiffs' range of possible recovery for unpaid wages was between $0.00 and $303,214, with liquidated damages. However, Defendants heavily contested the actual hours worked by Plaintiff and were prepared to present witnesses to testify in opposition to his allegations, as Plaintiff alleged consecutive workweeks of approximately 72 hours or more working. Additionally, Defendants contested that Plaintiff was terminated for cause; specifically, that he abandoned the job for several weeks without notice to Defendants. The $60,000.00 settlement amount to Plaintiff, with Plaintiff receiving $40,000.00, therefore provides approximately 20% of Plaintiff's maximum claimed liquidated base owed wages. Based on the litigation risks discussed below, Defendants' defenses against Plaintiff's alleged hours worked, the total settlement of $60,000.00 is a fair and reasonable result.

The second and third factors also favor approval. If the Parties were to continue litigation, the Parties would need to conduct full discovery, including costly depositions of all parties, including corporate representatives for Defendants, tenants, and other employees of Defendants. There is also a sharp dispute with regard to Plaintiff's alleged unpaid wages claims. Defendants deny and continue to deny that Plaintiff, as a superintendent, worked overtime, let alone forty (40) hours a week. Plaintiff asserts that he worked hours over 40 in a week for which he was not compensated and entitled to be paid for all of the hours that he worked. As such, it would require significant testimony from both parties to argue issues such as the actual number of hours worked each week, and whether Plaintiff was authorized to engage in some of the tasks he allegedly engaged in as a building superintendent. As a result, while Plaintiff believes he could establish liability based on his testimony, this would require significant time and prolonged litigation and Plaintiff acknowledges the significant risk that he would not be able to prove entitlement to any unpaid wages, including unpaid overtime. Recognizing the uncertainties of litigation and the additional time it would take to resolve his claims, he is willing to settle at this point in time for $60,000.00.

In addition, the proposed settlement is reasonable and should be approved because it represents a fair compromise. Plaintiff's potential recovery is based on facts that he assumes a jury would find, but which Defendants contest. The parties disagree as to the number of unpaid hours he worked. If Defendants succeeded in establishing that Plaintiff worked less hours than he claims, Plaintiff's recovery would be significantly less that the proposed settlement amount. Plaintiff has evaluated the strengths and weaknesses of his claims, and he has considered the fact that his ability to collect money now from Defendants is certain. In light of these factors, the settlement is fair and reasonable.

The fourth and fifth factors also weigh in favor of approval. This settlement follows extensive arms-length negotiations by experienced counsel which occurred over a period of months, with multiple phone calls and ultimately a face-to-face meeting. Additionally, in January, 2023, the parties attended mediation, during which a mediator's proposal of $70,000 was made. Although the mediation was ultimately unsuccessful, the parties ultimately settled for a number close to this mediator's proposal after Defendant's established additional defenses to Plaintiff's

3

claims. The contested litigation and arms' length negotiations in this matter, together with the final settlement amount in comparison to the mediator's proposal, is an indication that the settlement is fair and reasonable and should be approved. *See Khait v. Whirlpool Corp.* 2010 U.S. Dist. LEXIS 4067, 20 (E.D.N.Y. 2010). Additionally, the contested nature of this matter demonstrates the absence of fraud or collusion and the settlement amount represents a significant percentage of Plaintiff's potential recovery juxtaposed with the sharp dispute as to claimed hours worked by each side. Accordingly, the proposed settlement satisfies all five *Cheeks* factors.

Finally, the agreement's provisions are identical to similar agreements which have previously been approved by courts in this circuit. The release provision in the agreement is a mutual general release, and Plaintiff is no longer employed by Defendants. *See Strauss v. Little Fish Corporation*, No. 19 Civ. 10158 (LJL), 2020 WL 4041511, at *4-6 (S.D.N.Y. July 17, 2020) (finding that a mutual general release "permits the two parties, who have parties, who have evident hostility towards one another, to walk away from the relationship" where there no further employment relationship); *see also Lola v. Skadden, Arps, Meagher, Slate, & Flom LL*P, No. 13 Civ 5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) (finding that a mutual release "assuage[es] concerns that the waiver unfairly benefits only Defendants"): *Souza v. 65 St. Marks Bistro*, No. 15 Civ. 327 (JLC), 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015) ("[a] mutual release will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes").

The settlement provides for reasonable attorneys' fees and costs to Plaintiff's counsel. Pursuant to the agreement, counsel will receive $20,000 in fees. Plaintiff's counsel is not seeking reimbursement of costs expended in this matter. The proposed fee award should be approved because it was consensual and a one-third contingency payment was agreed to by Plaintiff. *See Mireku v. Red Vision Sys. Inc.*, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. 2013); *Martinez v. Consulate Gen. of Algeria in N.Y.*, 2016 U.S. LEXIS 157999, 8-9 (S.D.N.Y). Additionally, Plaintiff's counsel have been working diligently on this matter since their retention in September 2022.

Specifically, Jordan Harlow is a former Partner of Glass Harlow & Hogrogian LLP, and current Partner of Harlow Law, P.C. His work is generally billed at a rate of $350 to $400 per hour. Mr. Harlow has extensive experience litigating wage and hour and employment discrimination claims, with over 12 years of practice. Mr. Harlow first worked for Glass Krakower LLP as Of Counsel beginning in 2012, then he worked as Of Counsel and subsequently Partner of Glass & Hogrogian LLP, until he became a named Partner of Glass Harlow & Hogrogian LLP. In January, 2024, he opened his own law firm, Harlow Law, P.C., under which he currently operates. His entire practice has been dedicated to employment and labor law litigation. Mr. Harlow expended significant time and resources putting the case into suit, litigating this matter, and in his attempts to resolve this matter.

In total, more than 100 hours of attorney time have been spent drafting and responding to exchanges of correspondence, participating in discussions with the client and adversary, drafting and filing the Complaint, Amended Complaint, and Second Amended Complaint, preparing and attending court conferences, preparing and reviewing discovery exchanges pursuant to the Court's discovery protocol for FLSA cases, drafting a mediation statement and corresponding spreadsheet

detailing every single hour of alleged overtime by Plaintiff, preparing for a mediation and settlement conference, preparing for Plaintiff's deposition and other meetings with defense counsel, and preparing these documents for approval. Even at a significantly reduced rate of $250/hour, the time invested by counsel so far would amount to more than $25,000 in fees alone, which is more than what is being allocated to fees and costs.

For all of the foregoing reasons, the parties jointly are requesting that this settlement be approved and the matter dismissed. We thank you for your attention and the assistance you provided in helping us reach a fair and reasonable resolution to this litigation.

Respectfully

/s/
Jordan Harlow, Esq.

Enc.
CC: All Counsel (via ECF)